**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Henry McCREE, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 12, 2004.
Filed Aug. 12, 2004.

John Packel, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: JOYCE, OLSZEWSKI, and JOHNSON, JJ.

OPINION BY OLSZEWSKI, J.:

¶ 1 Henry McCree (appellant/defendant) appeals from the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County (DeFino–Nastasi, J.), after a bench trial in which he was convicted of possession with intent to deliver (PWID) Xanax, a controlled substance.[1] On appeal, appellant argues: (1) that the evidence presented was insufficient to sustain a conviction for PWID, and (2) that the court improperly admitted pill bottles found after the police conducted a warrantless search of the car that appellant was driving. For the reasons stated below, we affirm.

¶ 2 The trial court sufficiently summarized the facts necessary for the disposition of the present appeal.

On September 24, 200[2], Police Officer [Stacey] Wallace was investigating the sale of pills at or about 700 West Girard Avenue. At 8:55 a.m., she came in contact with a man identified as Boyer. She asked Boyer if he had any pills for sale. Boyer indicated that he did not and that he needed to wait for a friend to get the pills. Boyer came back after 15 to 20 minutes and handed the officer eight (8) Xanax pills. Officer Wallace handed Boyer a $20.00 pre-recorded bill and asked Boyer if he could get more pills. Boyer indicated that he could. The officer then handed Boyer a $10.00 pre-recorded bill. Boyer then walked to a blue car where there was another person sitting in the driver's seat and sat in the passenger's seat. Police Officer Wallace notified back-up that she believed a narcotics sale was in progress in the vehicle.

Police Officer Cudjik testified that he and his partner were working backup to Officer Wallace. At about 9:15 a.m., he was directed to stop a male in a blue Pontiac, tag number DFZ3789. The officer approached the driver's side and his partner approached the passenger side. Officer Cudjik observed the Defendant sitting in the driver's side of the vehicle and observed him shove an orange/amber container under the seat cushion of the car. The officer believed that the orange/amber container was a pill bottle. The Defendant was taken out of the car by the officer. The officer reached under the seat cushion and recovered an amber pill bottle containing 52 blue pills, alleged [to be] Xanax. The officer took the Defendant to the back of the vehicle and placed him under arrest. The door to the car was left open. Officer Cudjik walked back over to the car and saw, in the door pocket, two additional pill jars, one of which was white. The officer took the bottles out of the door pocket, looked inside and found 12 OxyContin pills in one of the jars and 25 Percocet pills in the other. The two pill jars from the door pocket and the pill bottle recovered under the seat cushion were in the name of the Defendant. [At

---

1. At the same bench trial, the court found appellant not guilty of the crimes of simple possession of Xanax and conspiracy.

the same time appellant was removed from the vehicle,] Boyer was taken out of the vehicle. Recovered from Boyer was one pill which he spit out of his mouth, a few pills taken from his person and the pre-recorded buy money. No money was recovered from the Defendant.

Trial Court Opinion, 7/2/03, at 3–4.

¶ 3 We will first discuss appellant's contention that the trial court incorrectly denied his motion to suppress the drugs found in the car. When reviewing a motion to suppress evidence, our standard of review is well established.

[T]he admissibility of evidence is a matter addressed to the sound discretion of the trial court and ... an appellate court may only reverse upon a showing that the trial court abused its discretion.

*Commonwealth v. Weiss,* 565 Pa. 504, 776 A.2d 958, 967 (2001) (citations omitted).

[W]e consider whether the record supports the suppression court's factual findings, and the legal conclusions drawn therefrom, by reviewing the prosecution's evidence and only so much of the defense's evidence as remains uncontradicted within the context of the record as a whole. Factual findings unsupported by the evidence may be rejected, but if the record supports the suppression court's factual findings, reversal of a suppression court's actions is justified only if the inferences and legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Stackfield,* 438 Pa.Super. 88, 651 A.2d 558, 559 (1994) (citations omitted).

¶ 4 Appellant's argument centers on the plain view exception to the warrant requirement. The United States Supreme Court extensively discussed this exception in *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view; its incriminating character must also be "immediately apparent." ... Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.

*Horton,* 496 U.S. at 136–37, 110 S.Ct. 2301 (citations omitted).

¶ 5 Pennsylvania adopted this standard when our Supreme Court directly quoted *Horton* in *Commonwealth v. McCullum,* 529 Pa. 117, 602 A.2d 313, 320 (1992). Numerous cases follow the *Horton/McCullum* plain view exception. *See Commonwealth v. Graham,* 554 Pa. 472, 721 A.2d 1075 (1998); *Commonwealth v. Santiago,* 736 A.2d 624 (Pa.Super.1999); *Commonwealth v. Wells,* 441 Pa.Super. 272, 657 A.2d 507 (1995).

¶ 6 In *Commonwealth v. Ellis,* 541 Pa. 285, 662 A.2d 1043 (1995), however, our Supreme Court modified the *Horton/McCullum* plain view exception. In that case, our Supreme Court stated:

Under the plain view doctrine, the warrantless seizure of a piece of evidence which is in plain view is permissible when two criteria are met. First, the evidence must be seen from a lawful vantage point. Second, it must be immediately apparent to the viewer that the object observed is incriminating evidence. In other words, the observing officer must have probable cause to believe the evidence in question is contraband or incriminating evidence. *See*

*Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).

*Ellis,* 662 A.2d at 1049 (footnote omitted). *See also Commonwealth v. Petroll,* 558 Pa. 565, 738 A.2d 993 (1999); *Commonwealth v. Ballard,* 806 A.2d 889 (Pa.Super.2002). *Ellis* seemingly abandoned the final prong of the *Horton/McCullum* plain view exception requiring the police to have a lawful right to access the contraband in plain view.

¶ 7 Appellant asserts that the correct statement of the exception is expressed by *Horton* and *McCullum.* Not surprisingly, the Commonwealth asserts that the correct statement of the exception is found in *Ellis* and *Petroll.* Since our Supreme Court never expressly stated that it was eliminating the final prong of the *Horton/McCullum* exception, we understand appellant's frustration and confusion.

¶ 8 We are constrained to apply the *Ellis/Petroll* exception. As we have previously stated, the final prong of the *Horton/McCullum* exception "runs squarely against the cases of *Commonwealth v. Petroll,* 558 Pa. 565, 738 A.2d 993 (1999), and *Commonwealth v. Colon,* 777 A.2d 1097 (Pa.Super.2001)." *Commonwealth v. Clark,* 802 A.2d 658, 660 (Pa.Super.2002).

> Both *Petroll* and *Colon* involved seizures of items from automobiles that were observed in plain view inside the interior of a motor vehicle. In both cases the Commonwealth argued that the seizures were legal under the plain view doctrine, and in both cases the seizures were upheld. With respect to the applicability of the plain view doctrine, *Colon* seemingly draws a distinction between searching a vehicle without a warrant and seizing an item in "plain view," even if the item happens to be inside a motor vehicle. Thus, under *Colon,* police officers might be prohibited from searching a vehicle once the occupants have been removed, but the officers are not prohibited from seizing contraband observed in plain view inside the vehicle after a lawful stop.

> *Petroll* asserts that "there can be no reasonable expectation of privacy in an item that is in plain view." 738 A.2d at 999. With respect to the position of the police officer when the item is observed, *Petroll* merely requires that the officer be in a "lawful vantage point." Thus, we can see no material distinction between the facts of the present case and *Petroll* and *Colon.* As such, Appellant's argument fails.

*Clark,* 802 A.2d at 660.

■ ¶ 9 Now that we have determined the appropriate test to utilize, we turn to the facts of the instant case. The trial court found that:

> The officer removes the—actually the container is in plain view. Just because the defendant tries to secrete it [under the seat cushion] doesn't mean that once he puts it out of the officer's view, the officer then needs a search warrant.

N.T., 2/6/02, at 30. From this finding, it is clear that the bottle was in plain view, despite the fact that appellant concealed the bottle under the seat cushion. During a narcotics investigation involving prescription drugs, Officer Cudjik stopped appellant and saw an orange or amber colored container in appellant's hand through the window of appellant's vehicle. Immediately after identifying himself, appellant concealed the container. Further, the incriminating nature of the bottle was immediately apparent given the surrounding circumstances. Therefore, the trial court correctly admitted this pill bottle under the plain view exception.

■ ¶ 10 The seizure of the other two bottles also falls under the plain view exception. The trial court found that, after the police arrested appellant, they returned to the car to find that the door was left open. The police then observed two additional bottles in the door pocket. We believe that these facts are sufficient to establish that the bottles were in plain view, that a trained police officer would immediately identify the criminal nature of the pill bottles (especially in a high drug area and immediately after they observed appellant conceal a third pill bottle), and the police were in a place where they could lawfully view the bottles (that place being next to the open car door). The plain view exception therefore applies to the remaining two bottles.

■ ¶ 11 Appellant next argues that there was insufficient evidence to support his conviction for PWID. The Commonwealth contends that appellant waived this issue because he failed to allege with specificity why the evidence was insufficient.

■ ¶ 12 It is well settled that when a trial court requests a statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925, that statement must indicate, with specificity, the error to be addressed on appeal.

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.

> In other words, a Concise Statement which is too vague to allow the court to identify the issue raised on appeal is the functional equivalent of no Concise Statement at all.

*Commonwealth v. Dowling,* 778 A.2d 683, 686–87 (Pa.Super.2001) (citations and quotation marks omitted). "Even if the trial court correctly guessed the issues Appellant brings before this Court, the vagueness of Appellant's Concise Statement renders all issues raised therein waived." *Commonwealth v. Heggins,* 809 A.2d 908, 912 (Pa.Super.2002) (citation omitted).

¶ 13 Appellant's concise statement raises a sufficiency of the evidence claim by stating that "[t]here was insufficient evidence to sustain the verdict of guilt beyond a reasonable doubt." Appellant's Concise Statement of Matters Complained of on Appeal, 6/10/03, no. 1. We have previously held that such language is too vague to permit review. *Commonwealth v. Lemon,* 804 A.2d 34, 37 (Pa.Super.2002) (statements that "[t]he verdict of the jury was against the evidence," "[t]he verdict of the jury was against the weight of the evidence," and "[t]he verdict was against the law" were too vague to permit adequate review); *Commonwealth v. Seibert,* 799 A.2d 54, 62 (Pa.Super.2002) (statement that "[t]he verdict of the jury was against the weight of the credible evidence as to all of the charges" was too vague).

¶ 14 While we could find appellant's concise statement as to this issue too vague to permit review, we feel that this case does not require such a conclusion. Appellant was only convicted of PWID. Therefore, there is no question that appellant was referring to his PWID conviction. Also, appellant has never contested that the drugs found in the car were his. In fact, the drugs were legally prescribed to him, and the names on the bottles were his name. Therefore, possession was not an issue at the trial. It follows that the only issue appellant could appeal is whether he had the intent to distribute the drugs. Because the trial court was aware the issue of intent was the only issue that

appellant could possibly appeal, we find that appellant's statement sufficiently identified the issue involved. Accordingly, we will now address the merits of appellant's claim.

¶ 15 The standard of review for sufficiency of the evidence claims is well settled.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lehman,* 820 A.2d 766, 772 (Pa.Super.2003) (citations omitted).

¶ 16 Appellant contends that Boyer's presence in appellant's car was equally likely to be the result of legal activity (*i.e.,* appellant could have been giving Boyer a ride) as it was the result of illegal activity (*i.e.,* a drug transaction). Appellant cites to *Commonwealth v. New,* 354 Pa. 188, 47 A.2d 450 (1946), to support his contention. *New* states that when "two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt, especially when one of the two guesses may result in depriving a defendant of his life or his liberty." *New,* 47 A.2d at 468. We do not believe that the inference that appellant was just giving Boyer a ride is as likely as the inference that appellant was selling prescription drugs.

¶ 17 Appellant was in an area known for its high volume of drug sales, particularly Xanax, OxyContin, and Percocet. After agreeing to find more Xanax for the undercover officer, Boyer immediately went to appellant's car. Officers also observed appellant throw the Xanax bottle underneath his seat In an attempt to conceal the bottle. Finally, appellant had not only Xanax, but OxyContin and Percocet in his possession. These facts are sufficient to permit the trier of fact to conclude beyond a reasonable doubt that appellant intended to sell Xanax to Boyer.

¶ 18 Given the above analysis, we conclude that the trial court correctly admitted the three pill bottles into evidence and that there existed sufficient evidence to convict appellant of the charge of possession with intent to deliver a controlled substance.

¶ 19 Judgment of sentence AFFIRMED.

¶ 20 JOHNSON, J., Concurs in the Result.