J-A16031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JENNIFER KOCHAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JON J. KOCHAN | : | |
| | : | |
| Appellant | : | No. 1291 MDA 2019 |

Appeal from the Decree Entered July 5, 2019
in the Court of Common Pleas of Wyoming County
Civil Division at No(s):  2014-1172

BEFORE:  PANELLA, P.J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED OCTOBER 22, 2020**

Jon J. Kochan ("Husband") appeals from the Order equitably distributing the marital assets of Husband and Jennifer Kochan ("Wife"), which was made final by the entry of the July 5, 2019, Divorce Decree.  We affirm.

In its Opinion, the trial court summarized the relevant factual and procedural history underlying this appeal, which we incorporate fully herein by reference, with the following addendum.  *See* Trial Court Opinion, 3/27/19, at 3-13.

On March 27, 2019, the trial court issued an Order, which overruled Husband's Exceptions, and an Opinion in support of its Order.  On July 5, 2019, the trial court entered a Divorce Decree, which incorporated the Divorce Master's September 14, 2018, Report and Recommendation.

J-A16031-20

Husband filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Husband raises the following claims for our review:

1. Did the trial court err and/or abuse its discretion in accepting the Report and Recommendation of the Master in Divorce on the basis of unstated credibility determinations of the parties?

2. Did the trial court abuse its discretion or commit an error of law where it appears from a review of the record that there is inadequate evidence to support the Master in Divorce's findings?

3. Did the trial court abuse its discretion or commit an error of law in accepting the Master's recommendation of a 60%/40% [division] of the value of the marital property without consideration of the factors set forth in Section 3502(a) of the Pennsylvania Divorce Code[1]?

4. Should the matter be remanded to the [trial c]ourt to correct certain factual errors of the Master, which were adopted by the [trial c]ourt in error?

Brief for Appellant at 4 (footnote added).

Initially, we must determine whether Husband has preserved these claims for our review by filing a voluminous Pa.R.A.P. 1925(b) Statement. Pennsylvania Rule of Appellate Procedure 1925(b) states, in relevant part, as follows:

**(b) Direction to file statement of errors complained of on appeal; instructions to the appellant and the trial court.** If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to

_____

[1] **See** 23 Pa.C.S.A. § 3502(a).

- 2 -

file of record in the trial court and serve on the judge a *concise* statement of the errors complained of on appeal ("Statement").

\* \* \*

(4) *Requirements; waiver.*

(i) The Statement shall set forth only those errors that the appellant intends to assert.

Pa.R.A.P. 1925(b) (emphasis added).

This Court has held that where two appellants had raised 49 issues and 55 issues, respectively, in their Pa.R.A.P. 1925(b) statements, both appellants had failed to preserve any claims on appeal. ***Kanter v. Epstein***, 866 A.2d 394, 402 (Pa. Super. 2004). The Court reasoned that,

> [b]y raising an outrageous number of issues, the [appellants] have deliberately circumvented the meaning and purpose of Rule 1925(b) and have thereby effectively precluded appellate review of the issues they now seek to raise. … [T]he [appellants'] voluminous Rule 1925(b) [s]tatements **did not identify the issues that the [appellants] actually intended to raise before the Superior Court.** The [appellants'] Rule 1925(b) Statements identify significantly more issues than [they] could possibly raise on appeal due to the appellate briefing limitations requiring that the [s]tatement of the question involved not exceed fifteen lines, and in any event, one page. ***See*** Pa.R.A.P. 2116(a). … This forced the trial court to guess which issue the [appellants] would actually raise on appeal. This Court has previously explained that "[w]hen a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." ***Commonwealth v. McCree***, 857 A.2d 188, 192 (Pa. Super. 2004).

***Kanter***, 866 A.2d at 402 (emphasis added).

Relevantly, this Court has applied the holding in ***Kanter*** to an equitable distribution dispute in a divorce proceeding. ***Jones v. Jones***, 878

A.2d 86, 90 (Pa. Super. 2005). In **Jones**, this Court found that the appellant had waived all claims on appeal where she included 29 issues in her seven-page Rule 1925(b) statement. The Court stated that "[appellant] engaged in misconduct when she attempted to overwhelm the trial court by filing a Rule 1925(b) [s]tatement that contained a multitude of issues that [the appellant] did not intend to raise and/or could not raise before this Court." **Id.**

Here, Husband's Rule 1925(b) Statement identifies 65 issues and is thirteen pages in length. Significantly, it appears that Husband did not intend to raise with this Court 45 of the issues that he had set forth in his Rule 1925(b) Statement, because he only addresses 20 issues in his appellate brief. **See** Brief for Appellant at 18-34. The trial court declined to issue a Rule 1925(a) opinion, and instead relies on the March 27, 2019, Opinion it issued in response to Husband's Exceptions. **See** Order, 8/27/19. Despite its best efforts to address all of Husband's claims, the trial court's March 27, 2019, Opinion failed to address 14 of his claims at all, and of the 52 claims that it does address, most of the responses consist of one or two summarily dismissive sentences. Consequently, we conclude that Husband

has waived all issues on appeal.[2]  **See** Pa.R.A.P. 1925(b); **Kanter**, **supra**; **Jones**, **supra**.

Decree affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/2020

---

[2] We note that the instant case is a simple dispute between two parties over equitable distribution in a divorce, and not a complicated case that may require numerous issues to be raised.  **See Eiser v. Brown & Williamson Tobacco Corp.**, 938 A.2d 417, 427 (Pa. 2007) (finding that appellants had preserved their claims, despite raising 24 issues with sub-issues, because the appellants had "brought forth a complicated multi-count lawsuit with numerous defendants resulting in many trial court rulings.").

IN THE COURT OF COMMON PLEAS OF THE 44TH JUDICIAL DISTRICT
WYOMING COUNTY BRANCH – CIVIL DIVISION

JENNIFER KOCHAN,
        Plaintiff
                         :        CIVIL ACTION – LAW

vs.

JON J. KOCHAN,               :        NO. 2014-CV-1172
        Defendants

**Michael A. Shotto, Jr., Esquire – Attorney for Plaintiff**
**Andrew J. Katsock, III, Esquire – Attorney for Defendant**
**Kathryn Karam, Esquire – Master**

**OPINION**

Certified from the records of the
Prothonotary in and for the
County of Wyoming, State of Pennsylvania
This 29 Day of MAR 2019
_____
Prothonotary

**Shurtleff, P.J., March 27, 2019:**

This Opinion is in support of the attached Order.

## I. BRIEF FACTS

The parties in this case are Plaintiff, Jennifer Kochan (hereinafter "Plaintiff") and

Defendant, Jon J. Kochan (hereinafter "Defendant"). The parties have two (2) minor

children. The parties were married on June 21, 2002 and separated on October 3, 2014.

Plaintiff instituted this action by filing a Complaint in Divorce on October 3, 2014. A

Motion for Appointment of Master was filed on May 30, 2017 on behalf of Plaintiff.

Kathryn A. Karam, Esquire (hereinafter "the Master") was thereafter appointed Master on

May 30, 2017. The claims pending before the Master were Divorce, Equitable

Distribution, Counsel Fees and Costs and Expenses.

Plaintiff filed her Inventory with the Master on May 30, 2017. On December 12,

2017, Plaintiff filed a Motion for Sanctions and Motion in Limine. Thereafter, Defendant

filed his Inventory and Appraisement on December 27, 2017. Plaintiff filed her Pre-Trial

Statement on April 6, 2018 and Defendant filed his On April 12, 2018. On April 13, 2018

3

and May 2, 2018, Master's hearings were held where testimony was presented. The Master issued her report on September 14, 2018.

At the Master's hearing, Plaintiff testified that the parties were married on June 21, 2002 and separated on October 3, 2014. (H.T. 4/13/18, pp. 5, 98). Plaintiff is the primary custodian of the parties' two minor children. (H.T. 4/13/18, p. 6). Plaintiff is employed by Intermountain Medical Group since 1990 where she earns a yearly income of Sixty-Three Thousand Dollars ($63,000.00). (H.T. 4/13/18, pp. 6, 12). At the time the parties were married, Defendant was laid off, collecting unemployment and Plaintiff primarily provided for the family. (H.T. 4/13/18, pp. 8, 99). When the parties were married, Defendant had approximately One Hundred Ten Thousand Dollars ($110,000.00) in debt, some of which was forgiven when Defendant settled with the credit card company. (H.T. 4/13/18, pp. 8-9).

Plaintiff testified that she primarily paid the home equity loan, the car loans and day care for the children. (H.T. 4/13/18, p. 11). The marital home is on land that was gifted to Plaintiff prior to her marriage to Defendant. (H.T. 4/13/18, p. 13). During the marriage, the parties' made several upgrades to the home, primarily using loans from Plaintiff's parents, the parties referred to as their home equity loan. (H.T. 4/13/18, p. 15). At the time of their separation, there was a balance of roughly Sixteen Thousand Dollars ($16,000.00) due and owing to Plaintiff's parents. *Id.* Plaintiff paid the balance off. (H.T. 4/13/18, p. 16). At the time of the parties' separation, there were several credit cards with debt that Plaintiff paid off. (H.T. 4/13/18, p. 24).

As part of these proceedings, Plaintiff had the marital home appraised. (H.T. 4/13/18, pp. 14, 16). During said appraisal, mold was discovered and issues with some

4

windows and doors were revealed where Defendant had drilled holes into the same. (H.T. 4/13/18, pp. 17, 20). The mold was primarily located in the basement where Defendant's personal property was stored. (H.T. 4/13/18, pp. 19-20). Plaintiff paid to have the mold removed and sought a credit from Defendant, as Defendant was aware of the mold prior to separation. (H.T. 4/13/18, p. 19). Despite Plaintiff's testimony otherwise, however, Defendant testified that he did not know of the mold. (H.T. 4/13/18, pp. 104, 107). He did testify to a flood in the basement prior to the parties moving in that was cleaned by a company paid for by insurance. (H.T. 4/13/18, pp. 104-6).

Defendant resides in an apartment that costs Nine Hundred Fifty Dollars ($950.00) per month. (H.T. 4/13/18, pp. 95-6). He is employed at Proctor and Gamble where he earns Twenty-Seven Dollars and Twenty-One Cents ($27.21) per hour and has been working there since January of 2006. (H.T. 4/13/18, pp. 96, 99). Defendant testified that he earns approximately Sixty-Seven Thousand Six Hundred Dollars ($67,600.00) per year. (H.T. 4/13/18, p. 97). Defendant has a pension with Proctor and Gamble that was valued at Forty-Five Thousand Six Hundred Thirty-Two Dollars ($45,632.00) at the time of the parties' separation. (H.T. 4/13/18, pp. 113-4). Defendant also has Proctor and Gamble stock that was valued at Fifteen Thousand Nine Dollars and Fifteen Cents ($15,009.15) at the time of separation. (H.T. 4/13/18, p. 114). Lastly, Defendant has a Proctor and Gamble 401k plan, which lists both he and Plaintiff, that was valued at Fifty Thousand Thirty-Two Dollars and Twelve Cents ($50, 032.12) at the time of the separation. (H.T. 4/13/18, pp. 114-5).

Defendant provides health insurance for Plaintiff and the children in the amount of One Hundred Seventy-One Dollars and Fifty Cents ($171.50) from every paycheck every

5

297a

two weeks. (H.T. 4/13/18, p. 116). Defendant also pays Seventeen Dollars ($17.00) per month for eye insurance and Twenty Dollars ($20.00) per month for dental insurance. *Id.*

Defendant testified that he moved into the marital residence on or about October 15, 2006 and that although the home was habitable, he made several improvements. (H.T. 4/13/18, pp. 100-1). Defendant further testified that most of the improvements that were made by him, were with the help of Plaintiff's father. (H.T. 4/13/18, pp. 100-2).

Defendant testified that there was a time where he was permitted to enter the marital residence for one hour with a Sheriff's Deputy to obtain his belongings. (H.T. 4/13/18, p. 107). When he went to the home, he gathered things "necessary for [him] to have lunch", such as sandwich bags, canned goods and food from the refrigerator and freezer. (H.T. 4/13/18, pp. 108-9).

The Master's report dated September 14, 2018 essentially granted equitable distribution to Plaintiff on a sixty percent (60%) – forty percent (40%) basis. On October 4, 2019 Defendant filed sixty-seven (67) exceptions to said Recommendation and Report. Defendant's Exceptions are as follows:

> 1. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony and/or Finding of Fact that Husband was contributing $1,000.00 per pay towards his 401K at Proctor and gamble; in fact, the Husband contributed $500.00 per pay towards his 401K at Proctor and Gamble.
>
> 2. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony and/or Finding of Fact that the Husband had $110,000.00 into the marriage; in fact, the Husband had no pre-marital debt.
>
> 3. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony and/or Finding of Fact that the Wife was gifted a portion of real property; in fact, no portion of the real property was gifted solely to the Wife prior to marriage.

6

*298a*

4. In support of his Exceptions, the Defendant argues the Master erred in her Summary of Testimony and/or Finding of Fact that the Husband contributed to mold in the family home; in fact, when the Husband was escorted off the real property by way of a Protection From Abuse Order obtained by the Wife, there was no mold at that time. Rather any mold accumulated after the Husband was barred from the property.

5. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony and/or Finding of Fact that the Wife "stored in the basement or garage" the Husband's personal property. In fact, the Wife damaged and caused the destruction of much of the Husband's personal property by putting it on the garage floor, unprotected.

6. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony and/or Finding of fact that the Husband drilled holes in the seal of doors and windows, causing damage. Rather, the Husband followed the instructions of the vendor, Therma Tru Doors.

7. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony and/or Finding of fact that the Husband received a $1,375.00 insurance check, when he did not, in fact, receive such a check.

8. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony by failing to make a Finding of fact that the Husband made six (6) payments towards the Ford Focus automobile.

9. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony by failing to make a Finding of Fact that the Husband did not take all of his personal property prior to leaving the family home at the time of the PFA, because the Sheriff told him he had only 20 minutes to take some clothing and the Husband did not have adequate time to remove other personal property.

10. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony by failing to make a Finding of Fact that at the time the Wife filed the PFA against him, the Husband also filed a PFA against the Wife.

11. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony by failing to make a Finding of Fact that the Husband's niece arranged the refinancing on the family home and because of the Husband, did not charge the Husband or Wife a fee.

12. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony by failing to make a Finding of Fact that there

was never any claims of abuse in the marriage, prior to the current PFA proceedings.

13. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony by failing to make a Finding of Fact that Husband has been waiting since June 27, 2016 to be permitted to retrieve his items of personal property still in the family home, but still has not receive the items.

14. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony by failing to make a Finding of Fact that in the beginning of the marriage the Wife "covered everyone under the health insurance"; in fact, the Wife did not cover the Husband with health insurance.

15. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony and/or Finding of Fact that the Wife "had no proof that Husband received an inheritance check or the value of it". Rather, the Husband submitted proof that he received an inheritance check that was non-marital property, however, the Master erred by including it as marital property for equitable distribution.

16. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony by failing to make a Finding of Fact that Husband was entitled to a monetary credit for his "sweat equity" in the construction of the family home and in failing to find that the Husband: A) paid the Wife's cousin to help with framing and tresses; B) paid his nephew to help install the roof and 50 square shingles.

17. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony and/or Finding of Fact that "in 2005 there was a flood due to a furnace issue in the basement" when, in fact, there was never any furnace issue.

18. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony and/or Finding of Fact that the house "is on eighteen (18) acres of gravel." In fact, the testimony was that the home is sited on 18" of gravel with 7 inches of gravel along the outside wall with piping leading to a Dutch drain.

19. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony and/or Finding of Fact that the Husband testified that he had more than one (1) bank saving's account, when in fact, the Husband testified that he had only one (1) savings account with a balance of $50.00.

8



20. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony and/or Finding of Fact that the Husband is only "paying for health insurance for the parties". Rather, the Husband testified that he pays $200.00 per paycheck for health, dental and vision insurance for the Wife and the two (2) minor children.

21. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony by failing to make a Finding of Fact that the Husband never cashed in his Mother's Life Insurance policy.

22. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony by failing to make a Finding of Fact that the Husband spent five (5) months landscaping the property, and the Master erred in failing to award him a monetary credit for his "sweat equity" in improving the value of the property.

23. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony by failing to make a Finding of Fact that the Wife burned shrubbery he planted on the family property.

24. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony by failing to make a Finding of Fact that the Wife submitted no evidence or met her burden of proof as to who performed work on the family home; the Wife presented no testimony as to who the other contractors were that worked on the family home, beside the Husband.

25. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony by failing to make a Finding of Fact that it was the Husband who solely cleared and had removed all trees from the premises, with no contribution from the wife.

26. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony by failing to make a Finding of Fact that it was the Husband who purchased and had installed commercial gutters on the family home, over the objection of the Wife's Father.

27. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony that a $5,000.00 savings bond was in the Husband's name, when in fact it is in the children's name and for their sole benefit.

28. In support of his Exceptions, the Defendant argues that he can supply the Court and Wife with copies of his auto insurance bills.

29. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony and/or Finding of Fact that the dog damages

9

furniture; in fact, the dog died on December 24, 2010 and the furniture was purchased after that date.

30. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony and/or Finding of Fact that the value of the real estate should be based upon splitting the difference between the parties' respective appraisals. The Master erred by failing to select the Husband's appraisal for the valuation of the family home.

31. The Master erred in ignoring the dictates of Section 3502(a) of the Pennsylvania Divorce Code, Subparagraph 7, and failing to award the Husband for his "contribution ... in the acquisition, preservation and appreciation" of the marital home.

32. In support of his Exceptions, the Defendant argues that the Master erred in her Summary of Testimony and/or Finding of Fact in failing to find that the Husband had the septic tanks removed and re-installed due to the Wife's Father miscalculations and further erred in failing to not award the Husband a monetary credit for doing so.

33. In support of his Exceptions, the Defendant argues that the Master erred in her Findings of Fact in not finding that after the Husband was removed from the family home through the PFA, the Wife went through the Husband's belongings and threw them in a pile on the floor.

34. In support of his Exceptions, the Defendant argues that the Master erred in her Findings of Fact that the Husband should pay any money or the Wife be granted a credit for mold remediation.

35. In support of his Exceptions, the Defendant argues that the Master erred in her Findings of Fact that the Husband presented no proof of as to the value of assets, and instead in failing to find that the Wife threw out the receipts and evidence after the Husband was removed from the home by PFA.

36. In support of his Exceptions, the Defendant argues that the Master erred in her Findings of Fact that the Husband received money from the Wife's insurance check regarding a car; and instead the Master erred in failing to find that the Husband never received any money from the Wife's insurance check.

37. The Master erred in awarding the Husband only $500.00 for his interest in five (5) television sets awarded to the Wife; the Master's valuation of only $100.00 per television is outrageous and an abuse of discretion.

10

302a

38. The recommendation of the Master that the Wife is entitled to a $2,200.00 credit for the Rainbow vacuum is in error; the Husband purchased the vacuum from his separate funds and is entitled to it, free of credit to the Wife.

39. The recommendation of the Master that the Husband is entitled to only a $2,200.00 credit for the award of $14,000.00 worth of consoles, linens, bed sets, etc. to the Wife is in error. The Master erred in failing to find that any damages and/or depreciation to the items were caused by the Wife taking in five (5) cats into the house, without the Husband's permission, after he was removed from the family home through the PFA.

40. The Master erred in her recommendation that the Husband not be granted a credit for his "sweat equity" in constructing the family home, when the wife offered no proof as to who did the work on the home other than the Husband.

41. The Master erred in her recommendation of a split of marital property on the basis of 60% to the Wife and 40% to the Husband. The Master erred in failing to award a 50% - 50% split of all marital property.

42. The Master erred in her recommendation or finding that the Husband's name is on the mortgage. Rather, the Master should have found that the Husband's name was not on the mortgage.

43. The Master erred in not crediting the Husband for the Wife's residing in the family home, rent free. The Husband is required to pay a separate rent for his living quarters, yet the Master erred in failing to impose a fair market rental value for the Husband's interest in the property in which the Wife resides.

44. The Master erred in recommending that the Husband pay the sum of $8,109.90 for a portion of a loan the Wife received from her parents. The Master erred in failing to find that the Husband did not have anything to do with the loan.

45. The Master's recommendation was in error in failing to give the Husband credit for his installation of all the cabinets and countertops by himself, increasing the value of the home.

46. The Master's recommendation that the Wife be awarded $4,911.12 from a $9,822.24 inheritance check received by the Husband is in error. The Master erred in her Finding of Fact that the Wife "had no proof that Husband received an inheritance check or the value of it". Rather, the Husband submitted proof that he received an inheritance check that was

11



non-marital property, however, the Master erred by including it as marital property for equitable distribution.

47. The Master's recommendation that the Husband remove all motor vehicles and personal property from the family home within 30 days is physically impossible and constitutes and abuse of discretion. As well, the Master's recommendation that the property be removed even if the Husband files Exceptions to the Master's Report, exceeded her authority as a matter of law, is in error, is unlawful, illegal, and constitutes an abuse of discretion.

48. The Master's recommendation was in error in failing to award and return to the Husband the wedding ring, pre-engagement ring and engagement ring or award a monetary credit therefore.

49. The Master's recommendation was in error in failing to award the Husband a monetary credit because he found condoms in the Wife's purse in 2013.

50. The Master's recommendation is in error in awarding the Wide the value of one-half the indebtedness on a credit card, when the testimony was that the Wife put the Husband's name on the credit card without his knowledge or consent.

51. The Master's recommendation is in error in awarding the Wife one-half the value of Vanguard Roth IRA and Vanguard IRS, and in failing to find that both accounts were pre-marital and not subject to equitable distribution.

52. The Master's recommendation is in error in failing to award the Husband for the value of his safe that remains in the family home.

53. The Master's recommendation is in error in failing to award the Husband his Father's personal property that remains in the family home.

54. The Master's recommendation is in error in failing to account for or credit the Husband for his payment of every utility, fuel, electrical, cell phone, internet, satellite television, home and auto insurance bill, plus all food bills, without contribution from the Wife.

55. The Master's recommendation is in error in that it fails to account and order the return of certain pre-marital property belonging to the Husband, namely:
      (A) Air compressor & hose;
      (B) Wheelbarrow;
      (C) Plywood;
      (D) Stricker steel grill;
      (E) Extension cords;

12

*304a*

(F) 2100 trash bags;

(G) Unopened Proctor and Gamble trial boxed;

(H) Cabinets;

(I) Christmas items purchased by the Husband after the divorce filing but which the Wife has kept;

(J) Toboggan sled.

56. The Husband further argues that the Master did not sufficiently consider and analyzer all of the testimony, and drew conclusions that are either not based on, or are controverted by, the testimony.

57. The Husband requests that this Honorable Court modify or change the Master's Report and Recommendation filed in the above matter and find in favor of the Defendant and against the Plaintiff, and institute equitable distribution of the parties' assets and debts on an equal 50% - 50% basis, as it existed prior to the Master's Report and Recommendation.

58. The Wife failed to meet her burden of proof, and therefor the Master's Report and Recommendations were in error.

59. The Master failed to consider all of the evidence concerning the factors set forth in Section 3502(a) of the Divorce Code in making her equitable distribution determination.

60. The Report and Recommendation does not take into account all of the assets and sources of income of Wife.

61. The assets and income attributed to the Husband are incorrect and in error.

62. The Master erred when she granted equitable distribution to the Plaintiff on a 60%/40% basis, without the Wife meeting her burden of proof by clear and convincing evidence.

63. The Master's Findings of Fact and Recommendation are not supported by competent evidence of record and this Honorable Court is not bound by the Master's deductions or inferences from her factual findings.

64. In support of his Motion, the Defendant argues that the Master's Report and Recommendation was against the weight of the evidence.

65. In support of his Motion, the Defendant argues the Master's Report and Recommendation was contrary to law.

66. Imposition of the Master's award as per the Report and Recommendation would cause unnecessary hardship and prejudice to the

13



Husband, and constitutes and abuse of the Master's discretion and commission of an error of law.

67. In the alternative, the Husband requests that this Honorable Court order a new hearing and the taking of additional testimony as to all or any of the issues which formed the basis of the Master's Report and Recommendation.

Hearing was scheduled on Defendant's Exceptions on January 14, 2019. At said hearing, counsel for Defendant made a Motion to have this matter decided on Briefs and certified record of the stenographer for the Master's hearing, *only*. Counsel for Plaintiff agreed, the parties were given thirty days to fully Brief the matter. This matter is now ripe for discussion.

## II. DISCUSSION

While under Pennsylvania law, a Master's Report and Recommendation is simply advisory, it is to be given the fullest consideration. *Simeone v. Simeone*, 551 A.2d 219, 225 (Pa.Super. 1988). In fashioning an equitable distribution award, a Master has broad discretion and is the fact finder having the power to make credibility determinations. More specifically, the Pennsylvania Superior Court has held, "[w]e are ... aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Morgante v. Morgante*, 119 A.3d 382, 387 (Pa.Super. 2015); *see also, Moran v. Moran*, 839 A.2d 1091, 1093 (Pa.Super. 2003), *citing, Simeone v. Simeone*, 551 A.2d 219, 225 (Pa.Super. 1988).

The Pennsylvania Superior Court has held that "[i]n making its decision regarding equitable distribution, the trial court must consider at least the eleven factors enumerated in 23 PA.C.S.A. § 3502(a)." *Iralsky v. Isralsky*, 824 A.2d 1187, 1191. In applying the factors, '[t]here is no simple formula by which to divide marital property. The method of

14

*306a*

distribution derives from the facts of the individual case. The list of factors [in the Code]
serves a as guideline for consideration, although the list is neither exhaustive nor specific
as to the weight to be given the various factors. Thus, the court has flexibility of method
and concomitantly assumes responsibility in rendering its decision." *Wang v. Feng*, 888
A.2d 882, 888 (Pa.Super. 2005).

Section 3502(a) of the Pennsylvania Divorce Code provides eleven (11) factors to
determine the equitable division of marital property. 23 Pa.C.S.A. § 3502(a). These eleven
(11) factors are:

1. The length of the marriage.
2. Any prior marriage of either party.
3. The age, health, station, amount and sources of and needs of each of the parties.
4. The contribution by one party to the education, training or increased earning power of the other party.
5. The opportunity of each party for future acquisitions of capital assets and income.
6. The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
7. The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of marital property, including the contribution of a party as homemaker.
8. The value of the property set apart to each party.
9. The standard of living of the parties established during the marriage.
10. The economic circumstances of each party at the time the division of property is to become effective.
10.1. The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.
10.2. The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.
11. Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a). The Domestic Relations Code does not dictate the weight to be
placed on each criteria, which is within the sole discretion of the trial court. *Sergi v. Sergi*,
506 A.2d 928 (Pa.Super. 1986). The trial court may divide the marital property in any such

15

proportions as it deems appropriate to effectuate economic justice between eh spouses and may consider each marital asset independently, applying a different percentage to each asset. 23 Pa.C.S.A. § 3502(a).

Defendant is requesting that this Court change the Master's Report and Recommendation and institute equitable distribution of the parties' assets and debts on an equal fifty percent (50%) – fifty percent (50%) basis. Defendant than goes on to list sixty-seven specific exceptions to the Master's Report and Recommendation. In an attempt for judicial economy, the Court will break Defendant's sixty-seven (67) Exceptions into the following categories:

1. The marital home

2. Miscellaneous.

3. New hearing/additional evidence.

4. Personal and uncontested property.

5. New and/or additional evidence.

The exceptions will now be addressed by the above-referenced categories.

**A. The Marital Home.**

Defendant alleges that the Master erred in not crediting him for his seat equity and in-kind contributions towards the marital home pursuant to 23 Pa.C.S.A. §3502(a)(7). In his exceptions, Defendant claims to have done all the work building, maintaining and repairing the home and the Master failed to give Defendant credit for the same. The Court will address each exception below:

**#3. Property not gifted to wife.** Although Defendant denies that the land was given to Plaintiff pre-marriage, he failed to bring any evidence to refute the same.

16

**#6. Drilled holes in the windows.** Defendant installed the windows and doors of the marital home with Plaintiff's Father. (H.T. 4/13/18, pp. 101-2). After water damage, Defendant spoke to someone who instructed him to have holes bored in the top of the doors and windows to prevent further water damage. (H.T. 4/13/18, pp. 101-5). Plaintiff sought reimbursement for the further damage that resulted from the holes. Defendant did not provide any evidence to refute that his drilling of holes in the windows and doors did not cause further damage. Thus, this claim is without merit.

**#11. Refi fee not charged by niece.** Defendant asserts the Master erred by failing to make a finding that Defendant's niece arranged the refinancing on the marital home and did not charge Defendant or Plaintiff a fee for the same and as such, Defendant should receive some type of credit. This assertion is not supported by the record is thus, without merit.

**#16. Sweat Equity.** Defendant wants credit for the "sweat equity" he put into the home. As the record reflects, however, Defendant did not provide any evidence to monetize this claim.

**#22. Sweat equity for landscaping.** Defendant claims because of his "sweat equity" in landscaping the property he improved the value of the marital residence. Both parties had the marital residence appraised and any improvements for landscaping certainly were considered in said appraisals. Thus, this claim lacks merit.

**#23. Wife burned shrubs.** Defendant testified that Plaintiff had removed shrubs Defendant planted. Beyond this, Defendant has failed to set forth how this affected the value of the marital home. As stated previously, both parties had the home appraised and landscaping certainly would have been accounted for in the same.

17

309a

**#24. Contractors.** Defendant testified that he and Plaintiff had hired contractors. Beyond this, however, Defendant provided no further evidence. As such, the Court is unaware how this is relevant.

**#25. Cleared out trees.** Defendant asserts that it was him alone who cleared out trees on the property. As such, he is seeking a credit for the same. As stated previously, both parties had the home appraised and landscaping certainly would have been accounted for in the same.

**#26. Gutters.** Defendant is seeking a credit because he bought and installed rain gutters on the home. Defendant provided no further evidence to support the same.

**#30. Failure to accept Defendant's appraisal.** Upon review of the Master's Report and Recommendation, the Master split the values of both appraisals. Neither party called his or her appraiser at the time of the hearing. Defendant has failed to provide any evidence on why his appraisal was more accurate than Plaintiff's appraisal.

**#31. Failure to award under §3502(a).** There is no evidence of record to suggest that the Master did not consider §3502(a) in making her Report and Recommendation.

**#32. Septic tanks.** Defendant asserts that due to Plaintiff's Father's miscalculations, Defendant was required to removed and re-install the septic tanks. Defendant asserts the Master erred in not crediting him for the same. There is no evidence of record to support this claim. Defendant presented no documentation to support why he should be given a monetary credit for the same.

**#40. Sweat equity.** This matter was addressed above.

18

310a

**#41.  60/40 split on home.**  The land the marital property the home sits on was gifted to Plaintiff pre-marriage.  Plaintiff testified that during and after the marriage, she paid the mortgage and home equity loan.  Although Defendant testified that he made several improvements to the home during the marriage, there was little evidence to support the same.

**#43.  Wife's rental value of the home.**  Pursuant to a Protection From Abuse Order, Defendant was not permitted in the marital residence.  Defendant asserts the Master erred for not giving him credit for the rental value of the home while Plaintiff and the children were living there.  Defendant provided no evidence to support the value of the fair market rental value of the home.  The Court finds this assertion without merit.

**#45.  Cabinet installation.**  Defendant asserts he should have been given a credit for installing cabinets.  Defendant provided no documentation to support this assertion.

**#54.  Household bills.**  Defendant is seeking a credit for his household and homemaking responsibilities. The Court finds this allegation without merit.

**#62.  60/40 split is in error.**  This exception was previously addressed.

**B.  Miscellaneous.**

**#33.  Plaintiff went through Defendant's items after he was removed from the home.**  This assertion is completely speculative and not supported by the record.

**#48.  Engagement and wedding rings.**  The law of the Commonwealth is clear that an engagement ring is a gift given in contemplation of marriage.

19

**#49. Monetary credit for condoms found in Plaintiff's purse during the marriage.** There is no merit to this exception and the Court is unclear what relief Defendant is requesting.

**#55. Property not awarded to Defendant.** The Master had to divide the property and upon review of the record, this Court does not find, nor has Defendant proven, that in so dividing the property, the Master abused her discretion.

**#56. The Master failed to give sufficient consideration.** Defendant has made a number of assertions that were not supported with documents or evidence. The Court finds that the Master correctly considered the facts as presented at the time of the hearing.

**#57. Distribution should be fifty percent (50%) – fifty percent (50%).** This exception was previously addressed.

**#58. Wife did not meet her burden.** The Master made credibility determinations during the hearing and as part of her Report and Recommendations. Defendant has failed to provide any evidence to rebut the Master's findings.

**#59. Master did not consider all the factors.** Defendant has not provided any evidence to support this allegation.

**#63. Findings were not supported by evidence.** Again, Defendant has failed to provide any evidence or argument to support this allegation.

**#64. Findings were against the weight of the evidence.** Again, Defendant has failed to provide any evidence or argument to support this allegation.

**#65. Finding are contrary to law.** Again, Defendant has failed to provide any evidence or argument to support this allegation.

20

312a

## C. New Hearing/Additional Evidence.

Defendant is requesting a new hearing to present additional evidence and testimony. The Master held a hearing on this matter over a two-day period and Defendant has failed to provide any reasoning or rationale as to why Defendant present all of his evidence during said hearing. As such, this Court finds Defendants request for a new hearing without merit.

## D. Personal and Uncontested Property.

Exceptions numbered 9, 13, 47 and 53 are moot as the matter was separately litigated and Defendant was given sixty (60) days to remove his belongings from the marital residence. Defendant waited until just ten (10) days prior to the deadline to begin removing the same. Defendant was unable to remove all of his items and as such a second day was scheduled for him to return and remove the rest of the items. Defendant failed to appear at that time.

## E. New and/or additional evidence.

**#1. 401K contributions.** Plaintiff testified that Defendant amassed his retirement by contributing money to his retirement, rather than to household expenses. Defendant provided no evidence to refute Plaintiff's testimony. Furthermore, Defendant provided no documents to show what he was contributing to his retirement. The Master valued Defendant's retirement accounts and divided them on a fifty-fifty basis.

**#2. Husband's premarital debt.** The exception is irrelevant as the record reflects that the debt was paid off before the divorce proceedings commenced.

21

*313a*

**#4. Mold.** The record reflects that mold was an ongoing problem in the marital residence. Defendant did not provide any evidence, other than his own testimony, to refute Plaintiff's testimony that mold was a continuing problem.

**#5. Property damage.** This exception was previously addressed.

**#7. Insurance check for $1,375.00.** Plaintiff provided correspondence between counsel reflecting the resolution of this check issue and as such, this matter was resolved pre-final distribution is without merit.

**#8. Six payments toward Ford.** There was no evidence presented to show that Defendant made any payments toward the Ford.

**#14. Insurance.** Defendant asserts the Master erred because in the beginning of the marriage, Plaintiff covered herself and the children for insurance but not Defendant. The Court is unclear what relief Defendant is now seeking and as such, finds this Exception without merit.

**#15. Inheritance.** Defendant asserts that Master erred in finding that Plaintiff had no proof of an inheritance check Defendant received and the value of it. Defendant had a check that was deposited into a marital account that he claims was from inheritance. Despite this, however, Defendant has provided no evidence to support the same.

**#19. More than one bank account.** The financial records were stipulated to by the parties and speak for themselves.

**#20. Husband's payment of health insurance.** The payment of health insurance for the children is a matter to be handled by the Domestic Relations Section of this Court under the child support obligations.

22

314a

**#21. Defendant's Mother's life insurance.**

**#27. Savings bonds.** Defendant claims that the savings bonds are solely in his name. Despite this, however, Defendant failed to present any evidence of the same.

**#28. Auto insurance.** Defendant did not provide any evidence to support his claim for auto insurance.

**#34. Mold remediation.** This matter was previously discussed.

**#35. Lost receipts.** Defendant claims he did not receive proper credit because Plaintiff had thrown away receipts. The Court finds this assertion without merit.

**#36. Check for car insurance claim.** This was previously addressed.

**#37. TV valuations.** Defendant did not present any evidence regarding tv valuations and as such, this exception is without merit.

**#38. Credit for Vacuum.** There is no evidence of record to suggest that the vacuum is anything but marital property.

**#39. Credit for linens and other household items.** There is no evidence of record to suggest that the linens are anything but marital property.

**#44. Loan to Plaintiff's parents.** There was no evidence presented to dispute Plaintiff's claim that her parents loaned the parties money that was to be repaid.

**#46. Inheritance check.** This matter was previously addressed and Defendant failed to prove that the check he claims to be an inheritance check, was in fact, an inheritance check.

**#50. Credit Cards.** The credit card accounts were stipulated to by the parties and there was no evidence presented to show that the credit card accounts were non-marital or that Plaintiff had disproportionate expenses.

23

**#51. Vanguard accounts.** The Vanguard account information was stipulated to by the parties. The accounts are marital property and there was no evidence presented to suggest otherwise.

**#52. Value of safe.** Defendant failed to have the safe appraised or present any evidence to support the value of the same.

**#60. Assets and income of Plaintiff.** There is no evidence of record to support that Plaintiff failed to disclose all of her assets and income.

**#61. Assets and income of Defendant.** There is no evidence of record to support that the Master failed to consider all of Defendant's assets and income.

**#66. Unnecessary hardship on Defendant.** There is no evidence of record to support Defendant's claim for hardship.

## III. CONCLUSION

Based on the foregoing, this Court issued the attached Order.

*316a*